[Civ. No. 1352.   Third Appellate District.—April 30, 1915.]

## NICHOLAS P. YOST et al., Appellants, v. GEORGE F. ROUX et al., Respondents.

MECHANICS' LIENS—LIEN OF MATERIALMAN—TIME FOR FILING—CONSTRUCTION OF CODE.—A person furnishing materials for the construction of a building may, under the amendment of 1911 to section 1187 of the Code of Civil Procedure (Stats. 1911, p. 1316), file his claim of lien within thirty days after he has "ceased to furnish materials" therefor.

ID.—EFFECT OF CODE AMENDMENT.—The amendment of the statute has given the materialman and the one who bestows labor, the option either to file his claim with reference to the time he ceases to fur-

nish materials or labor, or to wait and take his chances of knowing just when the building is deemed completed, a fact always within the knowledge of the owner and original contractor but not of the materialman and laborer.

APPEAL from a judgment of the Superior Court of Marin County. Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

H. C. Symonds, for Appellants.

Thomas E. Hayden, for Respondents.

CHIPMAN, P. J.—This is an action to enforce a material-man's lien. The record is here on the judgment-roll alone. The court made findings from which as conclusions of law it found: That plaintiffs are entitled to judgment against defendants Barrick & Murphy, a copartnership composed of W. C. Barrick and H. B. Murphy, for the sum of $146.13, but without costs; that plaintiffs are not entitled to a lien against the property of defendants Roux and wife and that these latter defendants are entitled to judgment against plaintiff for their costs. Judgment passed accordingly, from which plaintiffs appeal.

The contention of appellant is that the trial court drew erroneous conclusions from the findings and should have directed judgment enforcing the lien claimed as prayed for by plaintiffs.

It appears from the findings of fact that defendants Roux and wife were the owners of the lots, situated in the town of Mill Valley, on which the building in question was being erected; defendants Barrick and Murphy were the contractors employed by the owners to erect the building; plaintiffs were materialmen who furnished Barrick & Murphy materials for the building; that, about October 16, 1911, defendants Barrick & Murphy, having charge of the construction of said building, contracted with plaintiffs to furnish the lumber and other materials necessary for said purpose.

"6. That acting under and in pursuance of said contract, and as ordered by said defendants Barrick & Murphy, plaintiffs herein doing business under the firm name and style of Mill Valley Lumber Co., as aforesaid, furnished to said de-

fendants Barrick & Murphy, between the 16th day of October, 1911, and the 4th day of April, 1912, lumber, lath, shingles, lime, cement, plaster, nails and hardware and other building materials to be used and which were actually used in erecting and constructing said building, and between the 4th day of April, 1912, and the 27th day of April, 1912, and the last thereof on said latter date, certain building materials as herein after set forth in paragraph 13 of these findings, the agreed price of all of which materials so furnished, and also the reasonable value thereof, when so ordered and also when so furnished, was and is the sum of $1,676.51.''

Of this amount, $1,530.38 was paid to plaintiffs, leaving due $146.13. It is then found that, on May 25, 1912, "and within thirty days after plaintiffs had ceased to furnish materials as aforesaid," plaintiffs filed their claim of lien in due form.

"10. That the contract between defendants George F. Roux and May A. Roux, his wife, as owners, and defendants Barrick & Murphy, as contractors, under which the building described in the complaint was constructed, was completed on the 4th day of April, 1912, except as to trivial imperfections and modifications to correct them, which modifications were as follows: adding about three feet to the height of the brick chimney, putting in cement steps entering into the basement, and making changes, in window screens; and that on the 4th day of April, 1912, said defendants George F. Roux and May A. Roux, his wife, as owners, went into the open, complete, exclusive and actual use and occupation of said building.''

Finding 13, mentioned in finding 6, and referred to in finding 10, is as follows:

"13. That the only materials furnished by plaintiffs to defendants Barrick & Murphy, as contractors as aforesaid, from and after the 4th day of April, 1912, to and including the 27th day of April, 1912, were materials to be used, and were actually used, in making said modifications to correct said trivial imperfections in said buildings, and amounted in value to the sum of $10.34.''

Finding 11 is that, on April 9, 1912, "and within ten days after the completion of the contract last mentioned as aforesaid" (i. e., the contract between the owners and the contractors Barrick & Murphy), the owners filed and caused to be recorded a notice setting forth that "said contract last men-

tioned was completed,'' which was in due form and duly verified. Finding 12 is as follows:

"12. That plaintiffs failed to file any claim of lien in the office of the county recorder of Marin County within thirty days after the completion of said last mentioned contract as aforesaid, or within thirty days after the completion of said building save for said modifications, or within thirty days after the filing for record of the notice of completion as above set forth."

The rights of the parties are to be derived from section 1187 of the Code of Civil Procedure, as amended in 1911 (Stats. 1911, p. 1316.) The section reads: "Every original contractor, claiming the benefit of this chapter, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, within thirty days after he has ceased to labor or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, if any, under which he was employed, must file for record . . . a claim of lien containing,'' etc. (These requirements were complied with.) . . . "Any trivial imperfection in the said work, or in the completion of any contract by any lien claimant, or in the construction of any building, improvement or structure or of the alteration, addition to, or repair thereof, shall not be deemed such a lack of completion as to prevent the filing of any lien.'' Then follows what shall be deemed "equivalent to a completion for all the purposes of this chapter." The section then provides: "The owner may within ten days after completion of any contract, or within forty days after cessation from labor thereon, file for record . . . . a notice setting forth the date when the same was completed, or on which cessation from labor occurred, together with his name and the nature of his title, and a description of the property sufficient for identification, which notice shall be verified by himself or some other person on his behalf.'' It is then provided that if such notice be not so filed the owner "shall be estopped in any proceeding for the foreclosure of any lien . . . based on the ground that said lien was not filed within the time provided in this chapter."

Briefly stated, the court found that plaintiffs continued to furnish materials as ordered and which were used in the building up to April 27, 1912, and they filed their lien within

thirty days thereafter. The court found that the building was completed, except as to the trivial imperfections mentioned, on April 4, 1912, and that the owners filed their notice within ten days thereafter. The contention of respondents is that the time in which plaintiffs' rights to file their lien began to run from the completion of the building, April 4th, while appellants' contention is that they had thirty days from the time they ceased to furnish materials. The question is to be determined by the statute as it was amended in 1911 and not as it stood prior thereto. The old statute (Code Civ. Proc., sec. 1187), provided that "every person save the original contractor furnishing materials" was required to file his lien "at any time after the completion of any building, . . . and until the expiration of thirty days after the filing of said notice of completion or cessation, by said owner," mentioned in the early part of the section. It will be observed that the materialman was given thirty days after the *completion* of the building, under the former section, and also "until the expiration of thirty days after" the owner had filed said notice. The section has been amended so that now the materialman may file his claim of lien within thirty days after he has "ceased to . . . *furnish materials;* or at his option (if this clause refers to him) within thirty days after the completion of the original contract, if any, under which he was employed." Findings 6 and 13 were that plaintiffs furnished building materials between October 16, 1911, and April 4, 1912, and between April 4 and April 27, certain building materials, all of which were used in the building, amounting to $1676.51, of which plaintiffs had received $1530.38 and no more, leaving due $146.13.

It seems clear to us that plaintiffs had thirty days after they had "ceased to furnish materials" within which to file their claim of lien, and, in fact, filed it in time, unless they lost this right because the owner took possession of the building and accepted it as completed. The court found that the building was completed except as to certain modifications which required materials of the value of $10.34 and which the court found were "trivial imperfections." Still, these materials were used in the building and it was not complete in fact, though so treated by the owners, until those materials were so used. Whether trivial or not, the fact remained and was found by the court that plaintiffs did not cease to deliver

materials, which were used in the building, until April 27. We do not think the owner could cut off plaintiffs' right given by the statute by occupying the building while plaintiffs were still furnishing materials for it and which were being used in it. It is true that the statute provides that the occupation by the owner shall be deemed equivalent to a completion "for all the purposes of this chapter." But the time within which plaintiffs had the right to file their claim of lien did not begin to run from the *completion* of the building but from the time when they "ceased to *furnish materials.*" As to the original contractor, the time begins to run upon the "completion of his contract" and as to him the occupation of the building might "be deemed equivalent to a completion," for such is the language of the statute. The ten days' notice which the owner may give is to be given "after *completion* of any contract" and, in our opinion, does not change the rights of a materialman who may be called upon to furnish materials used in the building after the owner accepts it as completed. It generally happens that materials are delivered and used in a building and labor is bestowed upon it in course of its construction long before it is completed. The amendment of the statute seems to have given the materialman and the one who bestows labor the option either to file his claim with reference to the time he ceases to furnish materials or labor, or to wait and take his chances of knowing just when the building is deemed completed, a fact always within the knowledge of the owner and original contractor but not so of the materialman and laborer. We fail to see any purpose in the change in the statute unless this be true and it is fair to assume that the legislature had some purpose in making the amendment.

Inasmuch as the error complained of lies in the conclusions of law drawn from the findings and inasmuch as the findings are sufficient to support a judgment in accordance with the complaint, we see no reason for a new trial to be had. It is, therefore, ordered that the judgment be reversed and the trial court directed to enter judgment for plaintiffs as prayed for.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1915.